UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KYE S. BARKER and D-SONG LLC,

              Plaintiffs,

    v.

TOWN OF RUSTON, et al.,

              Defendants.

CASE NO. C14-5589 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF KYE BARKER'S 42 U.S.C. § 1983 CLAIMS AND REMANDING PLAINTIFFS' STATE LAW CLAIMS

This matter comes before the Court on Defendants Town of Ruston, the Ruston Police Department, Bruce Hopkins, Jeremy Kunkel, James Kaylor, Victor Celis, and John Doe 1–5's (collectively "Defendants") motion for summary judgment (Dkt. 28). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On July 2, 2014, Plaintiffs Kye Barker ("Barker") and D-Song LLC (collectively "Plaintiffs") filed suit against Defendants in Pierce County Superior Court. Dkt. 1-2. Barker alleged claims under 42 U.S.C. § 1983. *Id.* ¶ 3.1. Defendants removed the suit to this Court on July 22, 2014. Dkt. 1.

1   On June 3, 2015, Plaintiffs filed an amended complaint.  Dkt. 21 ("Comp.").

2  Barker alleges Defendants violated her Fourth, Fifth, and Fourteenth Amendment rights.

3  *Id.* ¶ 3.1.  Plaintiffs also allege state law claims for intentional and negligent infliction of

4  emotional distress, interference of business relationships, harassment, private nuisance,

5  defamation, unlawful taking of property, and discrimination and harassment under RCW

6  49.60.  *Id.* ¶¶ 3.2–3.8.

7   On February 17, 2016, Defendants moved for summary judgment.  Dkt. 28.  On

8  March 7, 2016, Plaintiffs responded.  Dkt. 30.  On March 10, 2016, Defendants replied

9  and moved to strike certain evidence submitted with Plaintiffs' response.[1]  Dkt. 32.

10                          **II. FACTUAL BACKGROUND**

11   The Unicorn Bar is located in the town of Ruston, Washington.  In 1992,

12  Defendant David Hopkins ("Hopkins") and his wife purchased a house about 150 feet

13  from the Unicorn Bar.  Dkt. 31, Declaration of Wayne Fricke ("Fricke Dec."), Ex. B

14  ("Hopkins Dep.") at 8:20–9:6.  After moving into their house, Hopkins and his wife

15  started making complaints about noise coming from the bar.  *Id.* at 14:13–15:7, 19:8–16;

16  Fricke Dec., Ex. C ("Celis Dep.") at 44:6–14, 53:17–25; Fricke Dec., Ex. E ("Kunkel

17  Dep.") at 17:8–18.

18   Barker purchased the Unicorn Bar in 2002.  Dkt. 29, Declaration of Patrick

19  McMahon, Ex. 1 ("Barker Dep.") at 17:9–10.  At the time, James Reinhold ("Reinhold")

20

21   [1] The Court recognizes Defendants' evidentiary objections, but the evidence at issue does
22  not change the Court's conclusion.  The Court will identify the evidence it relies upon in
    reaching its decision, and will discuss any issues of admissibility if need be.

1    was the Chief of Police for the Ruston Police Department and Michael Transue

2    ("Transue") was the mayor of Ruston.  Dkt. 31-6, Declaration of James Reinhold

3    ("Reinhold Dec.") at 2.

4         While Reinhold was the Chief of Police, Hopkins filed a complaint with the city

5    council about the Unicorn Bar.  *Id.*  In 2004 or 2005, Hopkins also videotaped customers

6    outside the Unicorn Bar and showed the video to the city council.  *Id.*; Hopkins Dec.

7    22:12–23:13.

8         Reinhold does "not recall any other Ruston citizens contacting [him] to complain

9    about the noise level, or other possible issues, regarding the Unicorn Bar."  Reinhold

10   Dec. at 3.  According to Reinhold, "Mayor Transue began insisting the Ruston Police

11   Department needed to begin issuing citation to the bar for excessive noise violations,"

12   based on Hopkins's complaints.  *Id.* at 2.  He further states that he was "also asked by

13   town officials to direct my officers to issue the Unicorn Bar employees more citations for

14   over-serving alcohol to bar patrons. . . . Town officials also wanted the police department

15   to cite more bar customers for driving under the influence of alcohol."  Reinhold Dec. at

16   3–4.

17        In 2008, Reinhold left his position as the Chief of Police.  Reinhold Dec. at 3.

18   Hopkins was subsequently elected as the mayor of Ruston.  *Id.*

19        According to Barker, "during the week when we have a lot of customers, [the

20   police officers] would stand in front of the door with their guns.  They were not firing,

21   but they had them with their police uniform on."  Barker Dep. at 40:12–15.  "[O]nce in a

22   while they will just walk around the—the business premises."  *Id.* at 40:17–18.  On

1   Friday or Saturday, the officers "would stand inside the door, in the business area, five to

2   ten minutes, sometimes 20 to 30 minutes." *Id.* at 40:25–41:2.

3       Darrell Bone ("Bone") has worked as a bartender at the Unicorn Bar off and on

4   since the mid-1990s.  Dkt. 31-1, Declaration of Darrell Bone ("Bone Dec.") at 1–2.

5   According to Bone, "officers park on the corners near the Unicorn and in the alley,

6   waiting for customers to make a mistake, such as not stopping at a stop sign," on an

7   almost nightly basis.  *Id.* at 2.  He further states: "On nearly every night, officers run,

8   walk or drive through the parking lot, checking license plates of customers without any

9   cause. . . . Officers routinely walk up to customers' vehicles and look inside with flash

10  lights."  *Id.*  "On weekend nights, officers usually come into the bar and stand by the door

11  for at least a half hour . . . ."  *Id.* at 3.  Bone also declares that "[o]n weekend nights, the

12  Unicorn has a D.J. who plays music.  Officers walk through the alley, measuring the

13  decibel level of the music with a hand-held device in order to cite the bar if the music is

14  too loud."  *Id.* at 2.  In 2011, Bone was cited by the Ruston police for over-serving

15  alcohol.  *Id.* at 3.  Bone was found not guilty in a jury trial.  *Id.*

16      Defendant Victor Celis ("Officer Celis") has worked as a police officer in Ruston

17  since 2010.  *See* Fricke Dec., Ex. C ("Celis Dep.") at 34:4–6.  According to Officer Celis,

18  "[o]ur policy was to conduct business checks throughout the city, and [the Unicorn Bar

19  is] in the city; so they were included in that."  *Id.* at 31:11–13.  During his shifts, Officer

20  Celis would check on businesses in Ruston, including the Unicorn Bar.  *Id.* at 24:10–

21  26:19.  When he went to check on the Unicorn Bar, Officer Celis would talk to the

22

1   doorperson and ask him how things were going. *Id.* at 30:6–21. Officer Celis would

2   stand at the door and take a look around for about five minutes. *Id.*

3       On December 1, 2013, Hopkins made a noise complaint with the Ruston Police

4   Department regarding "loud music coming from the [Unicorn Bar] for the past hour."

5   Fricke Dec., Ex. H at 2. Officer Celis was dispatched to investigate. *Id.* Officer Celis

6   drove to the Unicorn Bar and "parked about a block away to the west." *Id.* He got out of

7   his car, walked to the north side of the street, and stood on the sidewalk where he could

8   see the bar. *Id.* According to Officer Celis, he "could clearly hear the music coming

9   from the [Unicorn Bar]," even though the bar's front door was closed. *Id.* Officer stood

10  there for almost three minutes before walking up to the business. *Id.* Officer Celis told

11  the Unicorn Bar's DJ that he had received complaints about the ongoing loud music and

12  "would be completing a report and/or infraction." *Id.* Celis subsequently cited Barker

13  for a noise disturbance pursuant to Ruston Municipal Code 9.19.060. *Id.* at 1. Ruston

14  Municipal Code 9.19.060 provides that the cited person is only liable if he or she

15  "refuse[s] or intentionally fail[s] to cease the unreasonable noise when ordered to do so

16  by a police officer." The infraction was later dismissed. Fricke Dec., Ex. I.

17      Officer Celis has also arrested several customers of the Unicorn Bar. For

18  example, Officer Celis arrested an individual for urinating outside of the bar on August 2,

19  2014. Fricke Dec., Ex. H. That same month, Officer Celis arrested another individual

20  who was leaving the bar for driving under the influence. *Id.* at 9.

21      Defendant James Kaylor ("Officer Kaylor") has worked as a police officer in

22  Ruston since 2007 or 2008. Fricke Dec., Ex. J ("Kaylor Dep.") at 5:22–24. During his

1    shifts, Officer Kaylor would check on businesses in Ruston, including the Unicorn Bar.

2    *Id.* at 15:22–16:9.  When he went to check on the Unicorn Bar, Officer Kaylor says he

3    would not normally go in the bar.  *Id.* at 14:13–13.  According to Officer Kaylor, he and

4    Barker got along very well.  *Id.* at 14:15, 14:23.  He states: "I know she thinks we're bad

5    for business; so out of respect for her . . . [he did his] bar check or business check from

6    the outside."  *Id.* at 14:25–15:3.  Officer Kaylor would talk with the doorman or look in

7    the windows.  *Id.* at 15:3–6.  He explains, "[Barker] and I are friends; so if I see that

8    there's no customers inside, then I'll go inside, and we'll sit down at a table, and we'll

9    talk and hang out for a while."  *Id.* at 14:13–18.

## III. DISCUSSION

11        Defendants move for summary judgment, arguing Plaintiffs fail to provide

12    sufficient evidence to support their claims.  Dkt. 28 at 5.

**A.    Summary Judgment Standard**

14        Summary judgment is proper only if the pleadings, the discovery and disclosure

15    materials on file, and any affidavits show that there is no genuine issue as to any material

16    fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

17    The moving party is entitled to judgment as a matter of law when the nonmoving party

18    fails to make a sufficient showing on an essential element of a claim in the case on which

19    the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

20    323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

21    could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

22    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     42 U.S.C. § 1983 Claims**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person

1   acting under color of state law and that (2) the conduct deprived a person of a right,

2   privilege, or immunity secured by the Constitution or by the laws of the United States.

3   *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v.*

4   *Williams*, 474 U.S. 327 (1986).

5          Barker claims Defendants violated her Fourth, Fifth,[2] and Fourteenth Amendment

6   rights.  Comp. ¶ 3.1.  She also brings a municipal liability claim against the Town of

7   Ruston.  *See id.*  The Court finds Barker has failed to show a violation of her

8   constitutional rights, as discussed in greater detail below.

9          **1.      Fourth Amendment Claim**

10         Barker first alleges Defendants violated her Fourth Amendment rights by

11  conducting unreasonable searches and seizures of the Unicorn Bar.  Comp. ¶ 3.1; Dkt. 30

12  at 10.

13         "[T]he Fourth Amendment protects the owner of a bar from unreasonable searches

14  and seizures of her establishment."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1186

15  (9th Cir. 1995); *see also Benigni v. City of Hemet*, 879 F.2d 473, 477 (9th Cir. 1988).  To

16  prevail on her Fourth Amendment claim, Barker must show that she "had a *legitimate*

17  expectation of privacy in the place searched or the item seized."  *United States v. Ziegler*,

18  474 F.3d 1184, 1189 (9th Cir. 2007).  "This expectation is established where the claimant

19  _____

20         [2] It is unclear from the complaint and briefing whether Barker is alleging a violation of
    the Takings Clause of the Fifth Amendment, as applied to the states by the Fourteenth
21  Amendment.  To the extent Barker is bringing a federal takings claim, Barker has failed to
    present evidence showing that private property was taken for public use without just
22  compensation.  *See* U.S. Const. amend. V.

1   can show: (1) a subjective expectation of privacy; and (2) an objectively reasonable

2   expectation of privacy." *Id.* An expectation privacy exists in a commercial setting, but

3   "is different from, and indeed less than, a similar expectation in an individual's home."

4   *New York v. Burger*, 482 U.S. 691, 700 (1987). "This expectation is particularly

5   attenuated in . . . 'closely regulated' industries," *id.*, such as state-licensed, liquor-serving

6   establishments, *see Club Level, Inc. v. City of Wenatchee*, 618 Fed. App'x 316, 318 (9th

7   Cir. 2015).

8        At the outset, Barker does not identify what places were searched or seized, or

9   when those searches and seizures occurred. The evidence in the record shows that

10  Officer Celis would stand at the front door of the Unicorn Bar and take a look around for

11  about five minutes. Celis Dep. at 30:6–21. Similarly, Officer Kaylor did his checks from

12  the outside by talking with the doorman or looking in the windows. Kaylor Dep. at 15:3–

13  6. If Officer Kaylor saw there were no customers inside the Unicorn Bar, then he would

14  go inside, sit at a table, and hang out for a while. *Id.* at 14:13–18. According to Barker,

15  "during the week . . . [police officers] would stand in front of the door with their guns."

16  Barker Dep. at 40:12–15. On Friday or Saturday, the officers "would stand inside the

17  door, in the business area, five to ten minutes, sometimes 20 to 30 minutes." *Id.* at

18  40:25–41:2. "[O]nce in a while they will just walk around the—the business premises."

19  *Id.* at 40:17–18.

20       Barker has failed to point to evidence showing she had a subjective expectation of

21  privacy in the Unicorn Bar. Even if the Court were to assume Barker had a subjective

22

1    expectation of privacy, Barker has not demonstrated that this expectation was objectively

2    reasonable.  Under Washington law,

3           All licensed premises used in the manufacture, storage, or sale of
             liquor, or any premises or parts of premises used or in any way connected,
4            physically or otherwise, with the licensed business . . . shall at all times be
             open to inspection by any liquor enforcement officer, inspector or peace
5            officer.

6    RCW 66.28.090(1).  "Licensed premises" means "all areas of a premises under the legal

7    control of the licensee and available to or used by customers and/or employees in the

8    conduct of business operations."  WAC 314-01-005(1).  The Unicorn Bar is a business

9    that sells liquor, and was therefore required to be open for inspection by law enforcement

10   at all times under RCW 66.28.090(1).  Becker has not demonstrated that the officers

11   exceeded the scope of their authority under RCW 66.28.090(1).  Because Becker has not

12   shown she had a legitimate expectation of privacy, the Court grants Defendants' motion

13   on this claim.  *See Club Level*, 618 Fed. App'x at 318.

14          **2.     Equal Protection Claim**

15          Next, Barker brings an equal protection claim based on selective law enforcement

16   activities.[3]  Comp. ¶ 3.1; Dkt. 30 at 10.  "An equal protection claim based on selective

17   law enforcement activities is judged according to ordinary standards and the plaintiff

18

19   _____

20          [3] To the extent Barker also brings a due process claim based on selective law
     enforcement activity, the Court's conclusion is the same.  *See Benigni*, 879 F.2d at 478 ("[T]he
21   due process and equal protection theories in this case are practically identical, both being
     grounded on the allegation of arbitrary law enforcement activity for the purpose of harassment
22   and interference.").

1    must show both a discriminatory effect and a discriminatory motivation." *Benigni*, 879

2    F.2d at 477 (9th Cir. 1988) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

3          With respect to discriminatory effect, Barker argues the Unicorn Bar was targeted

4    by Ruston police officers more often than other bars.  Dkt. 30 at 11.  To support this

5    argument, Barker points to Bone's declaration.  Bone states that he has "been a bartender

6    at several other establishments in the region for nearly 20 years," including the West End

7    Tavern, the Strap at Spanaway, Magoo's in Tacoma, and the Goldfish Tavern in Tacoma.

8    Bone Dec. at 1–2.  Bone declares: "Having worked at several places that serve alcohol, I

9    know the amount of attention the Ruston Police pay The Unicorn is not usual." *Id.* at 2.

10   Barker, however, has not presented evidence that these other establishments are similarly

11   situated to the Unicorn Bar or how the law enforcement activity differs at these

12   establishments.  As noted above, conclusory, nonspecific statements in affidavits are not

13   sufficient, and missing facts will not be presumed. *Lujan*, 497 U.S. at 888–89.

14         As for discriminatory motivation, Barker argues Defendants' conduct was racially

15   motivated by her Korean ancestry.  Dkt. 30 at 12.  Barker relies on Bone's declaration in

16   which he states: "Although Ruston Police have always targeted the Unicorn, the attention

17   has been more intense since my boss, Kay Barker, bought it."  Bone Dec., Ex. at 2.  To

18   avoid summary judgment, Barker had the burden of producing evidence "sufficient to

19   permit a reasonable trier of fact to find by a preponderance of the evidence that [the

20   increased police attention] . . . was racially motivated." *FDIC v. Henderson*, 940 F.2d

21   465, 473 (9th Cir. 1991).  Barker has failed to produce sufficient evidence to create a

22   material question of fact as to racial motivation.

1    For these reasons, the Court grants Defendants' motion on this claim.

2        **3.    Due Process Claim**

3        Barker also alleges Defendants violated her substantive due process right to pursue

4    her occupation of choice.  Comp. ¶ 3.1; Dkt. 30 at 1; *see also Henderson*, 940 F.2d at

5    474.  The due process clause of the Fourteenth Amendment protects an individual's

6    "liberty or property interest in pursuing the 'common occupations or professions of life.'"

7    *Benigni*, 879 F.2d at 478 (quoting *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238–

8    39 (1957)).

9        To prevail on her claim, Barker must show (1) she is unable to pursue her

10   profession, and (2) this inability is due to official conduct that was "clearly arbitrary and

11   unreasonable, having no substantive relation to the public health, safety, morals or

12   general welfare."  *Henderson*, 940 F.2d at 474 (quoting *Lebbos v. Judges of Super. Ct.,*

13   *Santa Clara Cty.*, 883 F.2d 810, 818 (9th Cir. 1989)).  The right to pursue an occupation

14   encompasses "the right to pursue an entire profession, and not the right to pursue a

15   particular job."  *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007).

16       Here, Barker has not pointed to evidence that she is unable to pursue her

17   occupation as the owner and operator of a bar.  *See Henderson*, 940 F.2d at 474.  Barker

18   has also not submitted evidence that she was denied a license to operate the Unicorn Bar.

19   *See Club Level*, 618 Fed. App'x at 318.  In the absence of such evidence, the Court grants

20   Defendants' motion on this claim.

21

22

1        **4.      Municipal Liability**

2        Barker claims the Town of Ruston is responsible for the constitutional violations

3   of the individual defendants.  *See* Comp. ¶ 3.1.  "While local governments may be sued

4   under § 1983, they cannot be held vicariously liable for their employees' constitutional

5   violations."  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).  Instead, a

6   municipality may only be held liable under § 1983 if the execution of its policy, custom,

7   or practice caused a municipal employee to violate an individual's constitutional rights.

8   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

9        The Town of Ruston cannot be held liable because Barker has failed to show that a

10  constitutional violation occurred.  *See Long v. City & Cnty. of Honolulu*, 511 F.3d 901,

11  907 (9th Cir. 2007) ("If no constitutional violation occurred, the municipality cannot be

12  held liable . . . .").  The Court therefore grants Defendants' motion on Barker's municipal

13  liability claim.

14  **C.      State Law Claims**

15        Plaintiffs also bring state law claims for intentional and negligent infliction of

16  emotional distress, interference of business expectancy, harassment, private nuisance,

17  defamation, unlawful taking of property, and discrimination and harassment under RCW

18  49.60.  Comp. ¶¶ 3.2–3.8.

19        A district court may decline to exercise supplemental jurisdiction over state law

20  claims when it "has dismissed all claims over which it has original jurisdiction."  28

21  U.S.C. § 1367(c)(3).  Because the Court grants summary judgment on Barker's § 1983

22  claims, Plaintiffs no longer have a federal action before this Court.  Absent a federal

1   claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law

2   claims.

3                                        **IV. ORDER**

4          Therefore, it is hereby **ORDERED** that Defendants' motion for summary

5   judgment (Dkt. 28) is **GRANTED** with respect to Barker's § 1983 claims.  Plaintiffs'

6   state law claims are **REMANDED** to Pierce County Superior Court.

7          Dated this 19th day of April, 2016.

8

9                                        _____

10                                       BENJAMIN H. SETTLE
                                         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 14